STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Appeal of Harrison | } | Docket No. 44-2-05 Vtec |
| (Harrison PRD) | } | |
| | } | |

Decision and Order

Appellants James and Janet Harrison appealed from a decision of the Development Review Board (DRB) of the Town of Berkshire, denying their application for site plan approval of a proposed Planned Residential Development (PRD). Appellants are represented by Eric A. Poehlmann, Esq. and the Town is represented by Robert E. Farrar, Esq. Certain issues were decided by summary judgment in this and a related case, Docket No. 110-6-04 Vtec, after which an evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellants own an approximately 75-acre parcel of land in the Rural Lands zoning district of the Town of Berkshire, west of Vermont Route 108, with access to Route 108 by a fifty-foot-wide private right-of-way known as Harrison Road. Appellants propose to subdivide the parcel into seven lots. Lot 1 is a large L-shaped lot containing approximately 49½ acres of retained land, with access by the fifty-foot-wide right-of-way extending through the PRD lots. The remaining land of just over 25 acres in the south easterly corner of the overall parcel is proposed for a six-lot PRD, consisting of five development lots (Lots 2 through 6) ranging from 1.33-acres to 3.33-acres in size, plus a 13.135-acre lot of common land (Lot 7) for the use of those five lots, including the land lying under the development

1

road and right-of-way.  The project also requires Act 250 approval and approval of the wastewater disposal systems under the state regulations, among other state permits.

The land is heavily wooded, with only a former logging road passing through the property in the general vicinity of, but slightly to the east of, the right-of-way.  Appellants expect that the development lots will remain wooded, except for the building envelopes for the houses and any clearing necessary for the septic systems and stormwater management systems.  They anticipate an Act 250 condition regulating clearing on the lots. The common land is proposed to remain wooded and to be available as open space for the use of the five development lots.  All the development lots have access to the common land by the right-of-way, which extends past the improved portion of the development road onto the common land.

The proposed PRD slopes generally from the northwest to the southeast.  The development roadway is located in the flattest, most accessible location on the PRD property; the slopes are steeper and the property is less accessible to the west.  The stormwater management system for the proposed PRD is located in the southeasterly corner of the PRD, on Lot 2.  The PRD plan also locates the primary septic disposal field for Lot 5 on Lot 6, and locates the replacement septic disposal field for Lot 5 on Lot 4.

In connection with the PRD application, Appellants requested a so-called waiver[1] of the lot size requirements for Lots 2 through 6 in the PRD and a so-called waiver of the street frontage requirements for Lots 2, 3, and 4 in the PRD (and for Lot 5 if necessary, see footnote 2).   The DRB denied the PRD site plan application based on "concerns" that the requested waivers of lot size and frontage "could cause problems with future development applications;" and based on "concerns about the ability of the septic systems as designed to function properly over time," in particular regarding the distance of the replacement

---

[1] In fact requesting the modifications of otherwise-applicable Bylaw standards, as provided for PRDs in §245.

system for lot 5 from the residence it would serve.

The parties stipulated that the sole issues for trial in determining whether the project should be approved are:

> 1. Should Appellants' proposed site plan be granted a waiver of the minimum lot frontage requirement? The parties agree that the provisions of the Town's Bylaws relevant to this issue are §§110(g), 245, 300(c)(1), and 430(d)(4).

> 2. Is the septic system of Appellants' proposed project suitable for the project, thereby obviating any of the Town's concerns over the system? The parties agree that the provisions of the Town's Bylaws relevant to this issue are §§110(i), 240, and 320(a)(3).

As designed, the right-of-way passes in a roughly easterly to westerly direction through the proposed PRD. The development road is built on this right-of-way to the interior of the PRD, where it ends in a cul-de-sac or turnaround extending southerly from the right-of-way. Individual driveways with access directly onto the development road serve the house sites on Lots 2 and 6; Lots 3, 4, and 5 have driveways with access onto the cul-de-sac portion of the development road. Lots 5 and 6 have additional frontage on the undeveloped right-of-way extending beyond the cul-de-sac. Due to the geometry of the cul-de-sac, Lots 2, 3, and 4[2] have less than the 200 feet of frontage required in the Rural Lands district. Zoning Bylaws, §430 (d)(4). Lot 2 has 158 feet of frontage, Lot 3 has 161 feet of frontage, and Lot 4 has 194 feet of frontage.

The cul-de-sac enables vehicles to turn around without having to use the residence driveways for that purpose. The development roadway, cul-de-sac and clustered lots are placed so as to avoid areas containing steep slopes and poorly drained soils, in compliance with §240(a)(1)(C), and to avoid the increased infrastructure costs that would result if the

---

[2] If frontage on the undeveloped portion of the right-of-way is not counted as "street" frontage, Lot 5 also lacks the required frontage.

25-acre PRD were split into five five-acre lots. §245(b), §245(d)(4). Clustering the lots enables the preservation of Lot 7 as common open space for the development. §245(b). Although the lots are clustered, the house sites are sufficiently separated in distance and in elevation, and by the forest vegetation, to preserve privacy and create attractive and healthful building sites. §240(a)(1)(C). Accordingly, a modification of the frontage requirements, as depicted on the site plan for the proposed PRD, is approved pursuant to §430(d)(4). As designed, the development roadway and the fifty-foot right-of-way provide adequate access for each of the lots to Route 108, and are approved as required by §300(c)(1). Moreover, to the extent that it has any regulatory effect, the proposed PRD meets the purpose statement of the Zoning Bylaws to provide safe housing for the population. §110(g).

The septic systems proposed for the PRD lots are pressurized mound systems. Each development lot will have a primary wastewater disposal area and a replacement wastewater area, as required by state wastewater disposal rules. In connection with designing the wastewater disposal systems for the development lots in the proposed PRD, Appellants' consultant evaluated the capacity of the soils in the proposed PRD with respect to their capacity for on-site disposal of household wastewater. The soils have also been reviewed in conjunction with the state review and permitting process for the sewage disposal systems, although the state permit applications will not be filed until the municipal permit process is concluded. Adequate areas of adequate soils were located within the development lots of the proposed PRD to provide wastewater disposal for at least five residences. The proposed primary and replacement areas were located accordingly, and the systems were designed to meet the state standards. The lots are clustered in the southeasterly area of the overall property so as to avoid areas with steep slopes and poorly drained soils, and to provide adequate isolation distances between the

4

houses, the septic systems, and the water supplies.

The proposed type of wastewater disposal system is commonly used in Vermont. Appellants' consultant has designed and overseen the installation of hundreds of similar systems, none of which have failed. Distances between the disposal fields and the houses served by the disposal fields are well within the distances that function properly in other such systems in Vermont. No contrary evidence was presented to suggest that the type of sewage disposal systems proposed for this PRD, or the actual design or locations of the particular sewage disposal systems proposed for this PRD were in any way inadequate or likely to fail.

Accordingly, the septic systems meet the requirements of §320(a)(3) and §240 in that they comply with all town and state regulations and in that they will not cause sewage or other harmful waste to be discharged into any water course or into any disposal facility beyond its proper capacity. Moreover, to the extent that it has any regulatory effect, the proposed PRD meets the purpose statement of the Zoning Bylaws to protect the public and individual landowners against harm or loss from failed septic systems. §110(i).

Based on the foregoing, it is hereby ORDERED and ADJUDGED that site plan approval for the proposed PRD is hereby GRANTED. This approval is conditioned on the establishment of an open space or conservation easement or similar instrument for Lot 7 as required by §245(d)(8).

Dated at Berlin, Vermont, this 21st day of November, 2006.

_____
Merideth Wright
Environmental Judge

5